UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. 8:18-cv-00731-EAK-MAP

DESSERI MCCRAY,

    Plaintiff,

v.

DEITSCH AND WRIGHT, P.A.,

    Defendant.
_____/

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Desseri McCray ("Plaintiff") hereby moves for summary judgment against Defendant Deitsch and Wright, P.A. ("Defendant") on behalf of all class members under 15 U.S.C. §§ 1692e(10) and 1692g(b). In support thereof, Plaintiff respectfully shows the following:

**I.    Introduction**

Plaintiff brings claims against Defendant under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, on behalf of herself and the class certified under Rule 23. Their claims arise out of a standardized collection letter ("the Letter") that Defendant used to collect debts that they allegedly owe to Excel Medical Imaging, P.I. ("Excel").

The Court has already entered judgment for Plaintiff under § 1692g(b). The undisputed facts show that summary judgment is appropriate on this claim with respect to the whole class. The Court previously suggested—in the context of its denial of Defendant's motion for judgment on the pleadings—that the § 1692e(10) claim must be resolved by a jury. Discovery has revealed that Defendant made *indisputably* false representations in its letters to Plaintiff and the class. Thus, the Court should also grant summary judgment to Plaintiff and the class under § 1692e(10).

## II.     Statement of Relevant Facts

The following facts are undisputed: Plaintiff and the other class members are natural persons. *See* Plaintiff's Statement of Undisputed Facts ("SOF") at ¶ 1. Plaintiff and the other class members were allegedly obligated to pay debts arising from medical services rendered by Excel ("the Debts"). *Id*. at ¶ 2. In the one year prior to the filing of this action, Defendant attempted to collect the Debts by sending collection letters based on the template shown at Doc. 51-2 at 8 ("the Letters") to Plaintiff and the other class members. *Id*. at ¶ 3. The Letters were the initial communications from Defendant with respect to the Debts. *Id*. at ¶ 4.

Further, Plaintiff asserts there is no *genuine* dispute as to the following additional facts: The Letters stated that Defendant "ha[d] been authorized to use any means at [its] disposal, within the limits of the law, necessary to collect the full balance." *Id*. at ¶ 5. At the time it sent the Letters, Defendant had not been authorized to take any further action with respect to the Debts, aside from sending the Letters. *Id*. at ¶ 6. Defendant never sued any of the class members. *Id*. at ¶ 7. Defendant does not possess any document(s) showing that Excel authorized it to file lawsuits on its behalf against Plaintiff or the class members. *Id*. at ¶ 8.

## III.    Procedural History

Plaintiff brought this action on March 27, 2018. Doc. 1. Plaintiff alleged that Defendant violated the FDCPA in three ways. First, she alleged that the Letter's language overshadowed the disclosure of the § 1692g notices required by the FDCPA—in violation of § 1692g(b). Doc. 1, at ¶¶ 30, 63-79. Second, she alleged that Defendant violated § 1692e(10) by falsely representing the amount of time she had to dispute her debt, when it sent her a second notice based on the Letter, which reiterated the § 1692g(a) disclosures. *Id*. at ¶ 85. Third, she alleged that the Letter's language violated § 1692e(10) by creating a false sense of urgency. *Id*. at ¶¶ 86-90.

On June 27, 2018, Defendant moved for judgment on the pleadings. Doc. 21. On October 26, 2018, the Court granted and denied it in part. *See* Doc. 37. With respect to Plaintiff's claim under § 1692g(b), the Court found that the Letter's "request for immediate action and prompt payment, coupled with threats of legal action, overshadow and are inconsistent with the debt validation notice advising Plaintiff of her right to challenge the debt within thirty days." *Id*. at 14. The Court ordered Defendant to show cause by November 9, 2018, as to "why judgment should not be entered in Plaintiff's favor on her Section 1692g(b) claim." *Id*. at 18-19.

With respect to the § 1692e(10) claim, the Court concluded that Defendant did not violate the FDCPA by misrepresenting that Plaintiff had additional time to dispute the debt by sending a second notice based on the Letter. *Id*. at 15-17. With respect to whether the Letter violated § 1692e(10) by conveying a "false sense of urgency" to the least sophisticated consumer, the Court determined that the claim would need to be decided by a jury. *Id*. at 17-18.

On November 8, 2018, Defendant responded to the Court's order to show cause regarding the § 1692g(b) claim. Doc. 40. Defendant did not dispute that Plaintiff's obligation was a "debt" or that Defendant is a "debt collector" under the FDCPA. *See* Doc. 74 at 4. On February 11, 2019, the Court entered judgment in favor of Plaintiff on her § 1692g(b) claim. *See id*. The Court noted that Plaintiff's "False Sense of Urgency" claim under § 1692e(10) "remains pending and awaiting adjudication on the merits." *Id*. at 12, n.7.

On March 28, 2019, Plaintiff moved for class certification. Doc. 85. Defendant did not respond to Plaintiff's motion, nor did it respond to the Court's order to show cause (Doc. 87). On April 18, 2019, the Court granted Plaintiff's motion for class certification and certified a class of "[a]ll individuals in the State of Florida to whom Defendant Deitsch and Wright, P.A. sent, between March 27, 2017, and March 27, 2018, and in an attempt to collect a debt, a collection

letter based on the same template used to create the collection letter sent to Plaintiff Desseri McCray, attached as 'Exhibit A' to the complaint, (Doc. 1-1)." Doc. 88 at 6.

The Court certified class claims under §§ 1692g(b) and 1692e(10). *Id*. The Court also appointed Plaintiff as lead plaintiff and representative of the class, and further appointed the undersigned as class counsel. *Id*. The undersigned hereby avers to the Court that the other class members have been notified of this action in accordance with the form approved by the Court, *see* Doc. 90, and that no class member has requested exclusion from the action.

### IV.  Legal Standard

"Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Salmeron-Salmeron v. Spivey*, 926 F.3d 1283, 1286 (11th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). "The Court considers all evidence and inferences reasonably drawn therefrom 'in the light most favorable to the nonmoving party.'" *Id*. (quoting *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1141 (11th Cir. 2014)). "The requirement to view the facts in the nonmoving party's favor extends only to 'genuine' disputes over material facts." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009). "A 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment." *Id*.

### V.  Argument

#### A.  The Court should grant summary judgment in favor of *the rest* of the class with respect to the § 1692g(b) claim.

When the Court entered judgment in favor of Plaintiff on her § 1692g(b) claim, the Court had not yet certified a class under Rule 23. The undisputed facts show that Defendant is liable to each class member for a violation of § 1692g(b) as a matter of law. "In order to prevail on an FDCPA claim, a plaintiff must plead and prove three elements." *Erickson v. Gen. Elec. Co*., 854

4

F. Supp. 2d 1178, 1182 (M.D. Fla. 2012). "First, the plaintiff must have been the object of a collection activity arising from consumer debt." *Id*. (citing *McCorriston v. L.W.T., Inc.*, 536 F.Supp.2d 1268, 1273 (M.D.Fla.2008)). "Second, the defendant must be a debt collector as defined by the FDCPA." *Ibid*. "Third, the defendant must have engaged in an act or omission prohibited by the FDCPA." *Ibid*.

All three criteria are met with respect to the other class members. Worth noting, Defendant did not contest the first two elements with respect to Plaintiff. *See* Doc. 74 at 4 ("Here, neither party disputes that Plaintiff was the object of collection activity arising from consumer debt, or that Defendant is a debt collector as defined by the FDCPA."). Defendant has stipulated that the Letters were the initial communications to the class members, *see* Exhibit A to SOF, making summary judgment in their favor appropriate.

       **1.**      **Each class member was the object of collection activity arising from a consumer debt.**

Defendant concedes that each class member is a natural person who was allegedly obligated to pay a debt arising from medical services rendered by Excel Medical Imaging, P.I. *See* SOF at ¶¶ 1-2. Defendant further concedes that it attempted to collect these debts by mailing them a letter based on the same template used to send letters to Plaintiff. *Id*. at ¶ 3. There is no serious dispute that medical services are "personal, family, or household" in nature. *See Shipman v. Marlo Enterprises, Inc.*, No. CV414-052, 2018 WL 2120997, at *2 (S.D. Ga. May 8, 2018) (finding that "Plaintiff's debt is an appropriate consumer debt covered by the FDCPA" after receiving an affidavit that the debt was for "medical services"). Accordingly, the first element is met.

       **2.**      **Defendant is a "debt collector" under the FDCPA.**

The Eleventh Circuit has explained that "a party can qualify as a 'debt collector'…by 'regularly' attempting to collect debts." *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d

5

1211, 1218 (11th Cir. 2012). The class list produced by Defendant in discovery shows that it sent letters attempting to collect debts on a regular basis. *See* Doc. 86-2 (showing eight letters sent in April 2017; 16 letters sent in May 2017; two letters sent in June 2017; 26 letters sent in July 2017; 30 letters sent in August 2017; four letters sent in October 2017; three letters sent in November 2017; seven letters sent in December 2017, and one letter sent in January 2018).

The regularity of Defendant's collection activity is shown not only by volume, but by frequency. Most of the Letters were sent out in batches, with approximately one batch per month. *Id*. All of the Letters were an attempt to collect a consumer "debt" under the FDCPA, since they related to alleged obligations for medical services rendered by Excel. *See* SOF at ¶¶ 2-3. There is no triable issue over whether Defendant is a "debt collector" under the FDCPA.

### 3. The Letters violated § 1692g(b) with respect to each class member.

The Court already found that the Letter violates § 1692g(b). *See* Doc. 74. Section 1692g(b) only applies to a debt collector's *initial* written communication with respect to a debt. *See* 15 U.S.C. § 1692g(b). Defendant has stipulated that the Letters were, in fact, the initial communication between it and the class members with respect to the Debts. *See* SOF at ¶ 4.

Proof that each class member was sent a deficient initial communication from Defendant is sufficient to establish liability under the FDCPA. Because FDCPA claims are evaluated under the objective, "least sophisticated consumer" standard, how each class member perceived the Letter is irrelevant to the determination of liability. *See Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668 (M.D. Fla. 1999) ("the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the 'least sophisticated consumer' would have been misled"). Summary judgment in favor of the other members of the class on the § 1692g(b) claim is therefore appropriate.

**B.     The Court should grant summary judgment in favor of Plaintiff and the class with respect to the § 1692e(10) claim.**

Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt…." 15 U.S.C. § 1692e(10). The Letters to the class—sent on law firm letterhead—stated: "We have been authorized to use any means at our disposal, within the limits of the law, necessary to collect the full balance." Doc. 1-1 at 2. After advising how to resolve the matter "immediately," the Letters continued: "Be advised if we do not receive payment promptly we will be forced to take additional action to recover the subject amounts." *Id*.

Plaintiff alleged that the Letter created a "false sense of urgency," Doc. 1 at ¶ 89, since Defendant did not institute a collection lawsuit against Plaintiff in the face of non-payment, but instead sent her another Letter. In denying Defendant's motion for judgment on the pleadings, the Court cited *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1177-78 (11th Cir. 1985), for the proposition that "[w]hether a collection notice's threats of future legal action could convey to the 'least sophisticated consumer' a false sense of urgency is a matter of fact to be decided by a jury and should not be decided by the court as a matter of law." Doc 37 at 17-18.

Notwithstanding this earlier ruling, summary judgment is appropriate here. Defendant's written answers in discovery show that it was *not* actually authorized by Excel to do anything but send letters on its behalf. Defendant did not sue any of the class members—nor has it provided any evidence that it initiated collection lawsuits for Excel (or any other client) in the past. These factual developments have two implications. First, Defendant made an indisputably "false representation" regarding its authority to take "additional action," which is enough to find a violation of § 1692e(10). Second, even if the class claims under § 1692e(10) are limited to showing a false sense of urgency, no reasonable jury could find otherwise on the record before the Court. The class members are entitled to summary judgment on their § 1692e(10) claims.

### 1. Defendant falsely represented that it was "authorized to use any means at [its] disposal" to collect the Debts from the class.

The class is entitled to summary judgment on their § 1692e(10) claims, because there is no genuine dispute that Defendant was not actually "authorized to use any means at [its] disposal" to collect the Debts from them. When Plaintiff asked it to provide the basis for this assertion in discovery, Defendant came up short. There is no need to have a jury decide whether the Letters constituted "[t]he use of any false representation…to collect or attempt to collect any debt…." 15 U.S.C. § 1692e(10). The Eleventh Circuit's opinion in *Jeter* does not preclude this result, and this type of false representation gives rise to liability under § 1692e(10).

#### a. Defendant's discovery responses show that it lacked the authority to file collection lawsuits on behalf of Excel.

Interrogatory No. 25 asked Defendant to "[i]dentify and describe all methods of collection that the creditor originating or owning Plaintiff's account authorized Defendant to use in connection with the collection of Plaintiff's account, and when it provided such authorization." Doc. 86-3 at 3. Defendant answered this interrogatory by stating, in full:

> *Defendant was authorized by creditor to send a letter* to [sic] *demanding payment*. The sole method of collection used by Defendant was letters drafted from the template provided to Plaintiff in discovery. No phone calls, e-mails or other means of communication were ever used to contact debtors.

*Id*. (emphasis added).

Defendant's own discovery responses, thus, show that it had not "*been authorized* to use *any means* at [its] disposal" to collect the Debt from Plaintiff—as stated in the Letter. Doc. 1-1 (emphasis added). There is no evidence that Defendant possessed *lesser* authority with respect to Plaintiff's account than that of any other class member. In fact, Plaintiff was one of a handful of consumers to whom Defendant sent *two* Letters. *See* Doc. 86-2 at 3. Yet, even with respect to Plaintiff, Defendant was only authorized to sends letters demanding payment. Doc. 86-3 at 3.

Defendant's other discovery responses confirm that it generally lacked authority to file suit on behalf of Excel—meaning Defendant misrepresented this fact with respect to *every* class member. Defendant admitted that it "did not file any collection lawsuits against Plaintiff" or any of the other members of the class. Doc. 86-3 at 3 (response to Interrogatory No. 24). Interrogatory No. 23 asked Defendant to "describe the additional action [it] intended to take" when it sent the first Letter to Plaintiff and "whether it needed additional authority from the creditor to take such additional action…." *Id*. at 2. In response, Defendant stated that it had not yet determined what additional action would be taken, and—critically—that it "*likely would have sought such authority* to take any additional action." *Id*. (emphasis added).

In other words, Defendant did not believe it had the requisite authority from Excel to file a collection lawsuit against Plaintiff. Moreover, Defendant lacks any documentary evidence that might have shown it had a general authorization from Excel to file collection lawsuits. Defendant was asked to admit that "[a] written contract or agreement exists that controls, directs, or otherwise relates to Defendant's performance in connection with the collection of Plaintiff's account." *See* Exhibit B, attached to SOF, at 2. Defendant "[a]dmitted that a written contract did exist, however, said written contract cannot be located at this time." *Id*. at 3. Likewise, when asked to produce "Defendant's agreement with the creditor of Plaintiff's account," Defendant stated that, to the best of its knowledge, "no such documents exist." *See* Exhibit C, attached to SOF, at 2.

In sum, the evidence at summary judgment shows that Defendant was only authorized by Excel to send letters demanding payment. It, therefore, falsely represented in the Letters that it had been authorized to use any means at its disposal to collect the Debts from the class members, in violation of § 1692e(10)'s prohibition against "[t]he use of any false representation…to collect or attempt to collect any debt…." 15 U.S.C. § 1692e(10).

### b. The Court may grant summary judgment to the class under the standard articulated in *Jeter*.

The Eleventh Circuit's opinion in *Jeter* does not preclude the entry of judgment in favor of the class members on their § 1692e(10) claims. The opinion teaches that a jury should evaluate *ambiguous* collection letters to determine whether they are *deceptive*—and to apply the "least sophisticated consumer" standard in doing so. Here, Defendant made an *unambiguous* and *false* representation that it had already been authorized to sue the class members.

In *Jeter*, a debt collector sent two letters, roughly one month apart, demanding payment within five days. 760 F.2d at 1171. Each letter stated that the collector would recommend to its client to proceed with legal action if payment was not received within that time period. *Id*. The Eleventh Circuit explained, however, that "[i]f one reads the letters *literally*, the alleged debtor is simply required to make payment to Credit Bureau within five days, and if the alleged debt is not paid, Credit Bureau will recommend suit *sometime* thereafter." *Id*. at 1176 (emphasis added). No action was ever taken against the plaintiff, but the record indicated that for over 10% of accounts involving the same creditor, legal action was taken. *Id*. at 1177. The debt collector claimed that it "did, in fact, intend to recommend legal action" against the plaintiff—it simply had not done so by the time it was contacted by the plaintiff's lawyer, roughly a month later. *Id*. at 1176.

While the appellate court acknowledged that a reader might "have taken Credit Bureau's letters as *empty threats* to recommend legal action at some undisclosed time in the *distant* future," it also agreed "that a reasonable jury could well have interpreted Credit Bureau's letters as threatening to take legal action *immediately* upon expiration of the five-day periods or shortly thereafter, if the debtor had not yet paid the alleged debt." *Id*. at 1177 (emphasis added). The question that the Eleventh Circuit said the jury needed to resolve was "whether the 'least sophisticated consumer' would *be deceived* by Credit Bureau's letters, i.e., whether the letters were

10

a 'deceptive means' to collect alleged debts, valid or invalid, by the use of false or *deliberately ambiguous threats* to recommend legal action." *Id*. (emphasis added).

In *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010), the Eleventh Circuit revisited the parameters of *Jeter*. "In *Jeter* [the appellate court] explained that where the parties reasonably disagree on the proper inferences that can be drawn from the debt collector's letter, resolution is for the trier of fact—not for the court on summary judgment." *Id*. at 1197. In *LeBlanc*, the Eleventh Circuit reversed the grant of summary judgment on a consumer's § 1692e(5) claim, finding that the issue should have been sent to the jury. *Id*. at 1187. This provision of the FDCPA prohibits "[t]he threat to take any action that cannot legally be taken," 15 U.S.C. § 1692e(5), and the debt collector in that case had not been licensed as a collector in the State of Florida—which the Eleventh Circuit concluded was a prerequisite to filing suit. *See LeBlanc*, 601 F.3d at 1192.

The *LeBlanc* court remanded for a jury's consideration whether the following language constituted a "threat" to file a lawsuit:

> *If* we are unable to resolve this issue within 35 days we *may* refer this matter to an attorney in your area for legal consideration. *If* suit is filed and *if* judgment is rendered against you, we *will* collect payment utilizing all methods legally available to us, subject to your rights below.

*Id*. at 1195 (emphasis in original).

"In [the court's] view, reasonable jurors applying the 'least-sophisticated consumer' standard could disagree as to the inferences to be drawn from Unifund's letter to LeBlanc." *Id*. at 1196. "Read literally, the letter merely advises that legal action is *possible,* that it is *possible* for Unifund to refer the matter to an attorney for consideration, that a lawsuit is only one *possible* outcome or result." *Id*. (emphasis in original). "However, a reasonable juror applying the 'least-sophisticated consumer' standard could also view this letter as either an overt or thinly-veiled threat of suit." *Id*.

11

Here, there is no need to ask a jury to determine the "proper inferences" of the Letter. Unlike in *Jeter* and *LeBlanc*, the question in this case is not of deception or ambiguity. The Letters unambiguously state, "We *have been authorized to use <u>any means</u> at our disposal*, within the limits of the law, necessary to collect the full balance." *See* Doc. 1-1 (emphasis added). This constitutes a representation that—at the time each letter was sent—the law firm had *already* been authorized by Excel to bring a lawsuit against the class member to whom it was sent. There is no genuine dispute that this assertion was false.

Nor can there be any question, as a matter of law, that this type of false representation by a debt collector is actionable under § 1692e(10). "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996). "A debt collection letter on an attorney's letterhead conveys authority" and "implies that the attorney has reached a considered, professional judgment that the debtor is delinquent and is a *candidate* for legal action." *Id*. (emphasis added). It necessarily follows that a law firm's representation that it has already been authorized by its client to file a lawsuit is the type of representation that could "cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort." *Afewerki v. Anaya Law Grp*., 868 F.3d 771, 776 (9th Cir. 2017) (quoting *Tourgeman v. Collins Fin. Servs., Inc*., 755 F.3d 1109, 1121 (9th Cir. 2014)). Summary judgment can and should be entered.

> **2.     No reasonable jury could find that the Letters did not employ a "false sense of urgency."**

Plaintiff recognizes that, in certifying the class claims, the Court referred to the § 1692e(10) claim as "the False Sense of Urgency Claim." Doc. 88 at 6 (citing Doc. 1 at ¶¶ 86-90). The Court's use of the phrase "False Sense of Urgency" should not prevent the class from prevailing on claims

under § 1692e(10) based on the false representation described in Section V.B.1, *supra*, as this basis for liability falls within the scope of the allegations and the statute referenced in the Court's order.

To the extent the Court decides that the class members' claims are limited to a showing of a "false sense of urgency" based on the Letter, when read as a whole, summary judgment is still appropriate. In short, the evidence at summary judgment shows that there is no real dispute that (1) the least sophisticated consumer would perceive a sense of urgency upon reading the Letters, and (2) that this sense of urgency was "false."

      **a.**    **The only reasonable conclusion is that the least sophisticated consumer would feel a sense of urgency upon reading the Letter.**

To reach the conclusion that the least sophisticated consumer would *not* form a sense of urgency upon reading the Letter, the jury would need to accept a premise that is incompatible with the "least sophisticated consumer" standard. This consumer "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *LeBlanc*, 601 F.3d at 1194 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2nd Cir.1993)). At the same time, he is gullible and trusting, and he is not expected to "suspect the honesty of those with whom he transacts business." *Id*. (quoting *Jeter*, 760 F.2d at 1172-73).

Under this standard, the reader is literate and concerned about his own financial affairs. He would also understand that the Letter conveyed a "threat of additional (likely legal) action," Doc. 74 at 14, if payment was not promptly received. But he would *not* be expected to assume that Defendant was merely bluffing. And only a *sophisticated* reader would read the statement "we will *be forced to* take additional action," Doc. 1-1 (emphasis added), and consider that Defendant could have, instead, stated: 'we *will* take additional action.' The *least* sophisticated reader cannot be expected to detect this type of nuance in the Letter.

The situation is distinguishable from *Jeter*, as the "threat" in that case was to "recommend" legal action—whereas, here, the threat (made by a law firm) was to actually *take* legal action. Perhaps more importantly, the question in *Jeter* was merely whether the letter's use of ambiguous language was *deceptive*, while the issue germane to this analysis is whether the Letter would have created a "sense of urgency" in an unsophisticated reader.

Likewise, this case is distinguishable from *LeBlanc*, because that letter involved conditional language, advising about events that "may" happen. Here, the Letter stated that the law firm "will be forced to take additional action." For the reader not to develop some sense of urgency, he would either need to (1) not care about the possibility of being sued, or (2) understand that the law firm had actually *softened* the meaning of its statement by using the phrase "force." No reasonable jury could find that the Letter would not create a sense of urgency from the vantage of the least sophisticated consumer.

### b. The sense of urgency conveyed by the Letter was based on false pretenses.

The evidence at summary judgment shows that any sense of urgency that the least sophisticated formed as a result of the Letter was false. As discussed in Section V.B.1.a, *supra*, Defendant did not sue any of the class members and did not have its client's authorization to do so. In all but three cases, the only "additional action" that Defendant took was to send another identical letter. *See* Doc. 86-2 at 3; Doc. 86-3 at 3 ("The sole method of collection used by Defendant was letters drafted from the template provided to Plaintiff in discovery. No phone calls, e-mails or other means of communication were ever used to contact debtors."). Even if the reader became concerned that they would be subjected to more intensive collection efforts (short of an actual lawsuit), this still would have been a false sense of urgency.

Other circuits to recognize that deception is a factual question have acknowledged that "there are letters that are so deceptive and misleading as to violate the FDCPA as a matter of law…." *Gonzalez v. Kay*, 577 F.3d 600, 606 (5th Cir. 2009); *cf. Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 687 (7th Cir. 2017) ("The very ambiguity that Portfolio Recovery claims should save it from summary judgment convinces us that summary judgment was appropriate"), *cert. denied*, 138 S. Ct. 736, 199 L. Ed. 2d 604 (2018). The Court should find that summary judgment is appropriate on the question of whether the Letter was deceptive means of collection under § 1692e(10) for creating a false sense of urgency.

## VI. Conclusion

The Court should grant summary judgment in favor of the class members on their claims under § 1692g(b). The Letter was sent to each of them with respect to a consumer debt. There is no dispute that Defendant is a debt collector under the FDCPA or that each Letter was its initial communication with the class member. The Court has already found that the Letter violates § 1692g(b), making summary judgment appropriate for all class members.

Discovery has eliminated the need for the claims under § 1692e(10) to be presented to a jury. Defendant actually lacked authorization to bring lawsuits on behalf of the creditor when it sent the letters to the class and never sued any of them. The Letter therefore contained a false representation, the type of which is actionable under § 1692e(10). Even if the Court determines that the class may only prevail under § 1692e(10) by showing the Letter created a "false sense of urgency," summary judgment is still appropriate. No reasonable jury could conclude that the least sophisticated consumer would not have formed a sense of urgency after reading the Letter, and this sense of urgency was based on a false pretense.

The Court should find that Defendant is liable to all class members for violations of § 1692g(b) and § 1692e(10). The trial scheduled for November 2019 should be limited to the issue of the appropriate amount of damages under § 1692k.

Dated: August 30, 2019.

                                Respectfully submitted,

                                /s/ Amorette Rinkleib
                                Amorette Rinkleib (*pro hac vice*)
                                Thompson Consumer Law Group, PLLC
                                Attorneys for Plaintiff
                                5235 E. Southern Ave. D106-618
                                Mesa, AZ 85206
                                (602) 899-9189
                                (866) 317-2674
                                arinkleib@thompsonconsumerlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT the foregoing document, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW, was filed on August 30, 2019, by means of the Court's CM/ECF system which will send notice to counsel of record for Defendant as follows:

>Steven K. Platzek
>Graner Platzek & Allison, P.A.
>720 Palmetto Park Rd.
>Boca Raton, FL 33432
>skp@granerlaw.com

>/s/ Amorette Rinkleib
>Amorette Rinkleib